### PAUL v. CONSOLIDATED FIREWORKS CO. OF AMERICA.

(Supreme Court, Appellate Division, Second Department.   June 11, 1909.)

1. MASTER AND SERVANT (§§ 101, 102*) — FURNISHING APPLIANCES — DUTY OF MASTER.

Appliances which have been in use for many years, and have been found to serve their purpose with reasonable safety, may be retained in use by a master without the imputation of negligence, though others have found it advisable to make use of improved appliances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 181–184; Dec. Dig. §§ 101, 102.*]

2. MASTER AND SERVANT (§§ 101, 102*) — FURNISHING APPLIANCES — DUTY OF MASTER.

The question of the negligence of a master in the furnishing of appliances for his servants is the question of what a reasonably prudent man would in the exercise of reasonable care anticipate.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 173; Dec. Dig. §§ 101, 102.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MASTER AND SERVANT (§ 278*)—FURNISHING APPLIANCES—DUTY OF MASTER.
  In an action for injuries to an employé in a fireworks factory, caused by an explosion of a piece of fireworks by driving a nail into it, evidence *held* not to show actionable negligence in failing to furnish proper tools.
  [Ed. Note.—For other cases, see Master and Servant, Cent Dig. § 958; Dec. Dig. § 278.*]

  Hirschberg, P. J., dissenting.

Appeal from Trial Term, Richmond County.

Action by Henry Paul, an infant, by Henry M. Paul, his guardian ad litem, against the Consolidated Fireworks Company of America. From a judgment for plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, RICH, and MILLER, JJ.

Frederick W. Catlin, for appellant.
Frank H. Innes, for respondent.

WOODWARD, J. The plaintiff, a boy about 15 years of age, was lawfully employed by the defendant in one of its small buildings, the plant consisting of various detached structures, on the 27th day of March, 1907. The accident occurred in the finishing shop, a building 30 by 50 feet, and he was employed at the time in nailing small sticks to pieces of fireworks known as "geysers." These appear to be round pasteboard receptacles about 11 inches long and 2 inches in diameter, filled under hydraulic pressure with saltpeter, sulphur, and charcoal, the constituent elements of gunpowder. These geysers were made and filled in other buildings, and were then sent to the finishing room, where the plaintiff nailed on little sticks, about 7 inches long. These sticks had holes bored in them for the nail to pass through, and the point where the nail was to enter the geyser was indicated by a mark. The plaintiff put the nail—a sharp-pointed steel nail about an inch long, with a round head—through the hole in the stick, placed one of the geysers in a groove arranged for holding the same, and placing the nail point at the spot indicated, struck the nail a blow with a brass-faced hammer, the exact weight of which does not appear, but which had a handle only about 4 inches long. The nail did not go in at the first blow, and a second blow was struck, and at this instant there was a flash and an explosion, the plaintiff was seriously injured, and the building was consumed, resulting in the death of two other persons.

There is absolutely no evidence in the case to show what produced this explosion. There was undisputed evidence that the supposed contents of this geyser could not be exploded by concussion; that it could only be exploded by a spark. There was evidence that in doing the work small particles of the composition sifted out upon the table where the work was being performed, and that it was the duty of the plaintiff to sweep this up at intervals; but the evidence does not show that the explosion was due to the presence of this dust upon the table, and the most likely inference from the evidence, as we read it, is that the geyser itself contained some foreign substance, like a percussion cap or

a match, which was ignited by the stroke of the hammer, for the plaintiff, the only witness who tells how the accident happened, says that it seemed to him that the "geyser had burst—gone off." Of course, if this was the case, and the court so charged, there was no liability on the part of the defendant. But the plaintiff's theory, and the one which was permitted to go to the jury, after a denial of the defendant's motion for a nonsuit, to which an exception was noted, was that the accident was due to the use of a brass-faced hammer upon the steel tack or nail as it is called; that this contact produced a spark, which communicated with the dust upon the table. The plaintiff does not pretend that he saw any spark. The only possible evidence that a spark might have been produced is to be found in the testimony of an expert witness, one Southard. This witness, after qualifying generally, was asked to state:

"What is usual and customary, in the handling or using of gunpowder, with respect to the tools and implements used in connection with it? (This was objected to, as were other similar questions; but the ruling of the court is not in question here, so we will merely indicate the testimony.) Where gunpowder is used in manufacture, it is customary to use soft metals where force of any kind is applied to the powder, or to utensils holding the powder, or forms holding the powder. Why? So that there will be no spark produced by the striking of one tool against another. A brass tool or a copper tool is soft metal, and one soft metal upon another will not produce a spark."

The witness was then asked about his familiarity with nails such as were used, and, on his answering that he was familiar, the sample nail was put in evidence, as was also a geyser tube. The witness then testified to 25 years of familiarity with metals, etc., and was asked whether he was familiar with the effect of friction between metals, and, answering that he was, he was asked:

"And what is that effect usually, one metal being struck by another metal a violent blow?"

This was objected to as being vague and indefinite, and that the particular kind of metal should be named. The objection was overruled, with an exception to defendant, and the witness answered:

"The effect of iron or steel against iron or steel is to produce a spark. The effect of a soft metal, like brass, against steel or iron, is to produce a spark. The effect of one soft metal, like brass or copper, against brass or copper, is to produce no spark."

The witness was then asked if he was familiar with the usual and customary manner of handling gunpowder, with respect to the implements, tools, or other accessories in connection with it, and replied that he was. He was then asked:

"What kind of tools are usual and customary in the handling of gunpowder?"

This was objected to, and the court said:

"He said soft metal."

This is all of the testimony relating to the possibility of the accident resulting from a spark produced by the contact of the brass-faced hammer with the round head of a steel nail, and upon this testimony rests the verdict for $10,000 in favor of the plaintiff. It is to be observed

that the testimony as to the usual custom relates only to the tools used, and it is conceded that the hammer furnished by the defendant was a brass-faced hammer—a soft metal hammer. Clearly, then, upon the plaintiff's own case, there was no negligence in the supplying of the hammer, and so the case rests upon the question whether it was negligent to use steel nails of the character described in the evidence. The question put to the witness was, not what effect would usually follow the striking of a blow with a brass-faced hammer, with a four-inch handle, upon the round head of a sharp-pointed steel nail, where two or three blows were necessary to drive it home, but:

"What is that effect usually, one metal being struck by another metal a violent blow?"

Nor does the witness in his answer confine himself to the only situation shown by the evidence to have prevailed. He says:

"The effect of iron or steel against iron or steel is to produce a spark. The effect of a soft metal, like brass, against steel or iron, is to produce a spark. The effect of one soft metal, like brass or copper, against brass or copper, is to produce no spark."

If this testimony means to say that every violent blow between brass and iron or steel produces a spark, the common experiences of mankind stamp it as false. No such result follows in a very large majority of cases, if, indeed, any one ever saw such a result. But the witness did not pretend to say that the blow necessary to drive a sharp-pointed steel nail into one of these geysers was such a violent blow as would usually result in a spark, or that it would ever result in a spark, and unless this proposition found support in the evidence there was no foundation even for the plaintiff's theory of the case, and it was error to send the question to the jury.

But, beyond this, there was no evidence that a brass or copper nail, such as the learned court refers to in a memorandum handed down, could have been used for the purpose of nailing on these sticks of wood. On the contrary, it appears from the evidence that even the steel nails, with sharp points, were sometimes bent in driving, and there was no suggestion that any one else had ever used brass or copper nails for a like purpose. The incidental mention by one of defendant's witnesses that at some time the defendant had used a "covered nail," something like a staple, does not help out the case. What he meant by a covered nail does not appear, and his further description that it was something like a staple suggests that it was a nail with a curved, staple-like cover. In any event, it does not appear that it was not of steel, or that the particular design had any relation to the question presented here.

Upon the plaintiff's own case, therefore, there was no evidence to go to the jury. When we add to this the fact that the defendant produced three witnesses, some, if not all of them, disinterested, who had been familiar with the actual work in the defendant's plant for many years, and who testified that while the same kind of tools and implements had been used there for 20 years or more, yet that none of them had ever seen a spark produced by driving a steel nail with a brass-faced hammer, and had never heard of such a thing, and that the

defendant produced the man who made the hammer used, and that he testified that he had experimented with these hammers striking these nails, or striking steel, and had never been able to produce a spark, and that these witnesses are wholly uncontradicted, where is there any question of actionable negligence to go to the jury? Suppose we concede just what the plaintiff claims to be established by the evidence, that the stroke of this brass-faced hammer upon a steel nail produced a spark, and that this spark communicated to the dust upon the table, resulting in the explosion, would this make the defendant liable? The undisputed evidence is that for 20 years these same hammers and these same steel nails had been in use, with no one ever having seen a spark result, or hearing of such a thing. The rule is too well settled to justify the citation of authorities that tools and appliances which have been in use for many years, and have been found to serve their purpose with reasonable safety, may be retained in use without the imputation of negligence, even though others have found it advisable to make use of improved appliances. In other words, negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men, under the same circumstances, would or should, in the exercise of reasonable care, have anticipated. Would any reasonably prudent man, equipping a place such as that involved in this accident, have considered it dangerous to use a brass-faced hammer in driving a steel nail, sharp-pointed and about one inch in length, into a substance which was not explosive except by contact with a spark? That is the test. It is not whether a spark, after more than 20 years' experience, did actually develop, but whether it was such a result as reasonably prudent men would have anticipated; and, tried by that test, there was clearly no negligence in this case, even if the accident actually occurred in the manner the plaintiff would have us believe.

The plaintiff has been sorely injured; but due process of law requires that the defendant shall not be called upon to compensate for his injuries, unless it is liable for the result, and the evidence in this case is not sufficient for that purpose. There is absolutely no evidence of actionable negligence.

The judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. BURR, RICH, and MILLER, JJ., concur. HIRSCHBERG. P. J., dissents.