PAUL v. CONSOLIDATED FIREWORKS CO. OF AMERICA.

(Supreme Court, Appellate Division, Second Department. December 30, 1910.)

1. APPEAL AND ERROR (§ 927*)—REVIEW—REVIEW UPON DISMISSAL.

In determining the propriety of a judgment dismissing the complaint, plaintiff's evidence should be taken as true, and all permissible inferences favorable thereto drawn.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3748; Dec. Dig. § 927.*]

2. MASTER AND SERVANT (§ 286*)—INJURIES — ACTIONS — JURY QUESTION—NEGLIGENCE.

When injured, plaintiff was nailing a piece of wood to fireworks which were filled with highly explosive powder. The fireworks exploded immediately after plaintiff struck the nail. Plaintiff's evidence showed that the fireworks were highly explosive and could be exploded by driving a steel nail into them, and that such danger could be reduced somewhat by using nails made of a soft metal and by lubricating the explosive substance. Steel wire nails had been used without accident for five or six years. *Held*, that the question whether plaintiff's employer was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

negligent in not lubricating the explosive substance and in using steel wire nails was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 286.*]

3. MASTER AND SERVANT (§§ 101, 102*)—MASTER'S LIABILITY—FURNISHING TOOLS.

A master does not insure his employés' safety, and hence is not bound to furnish for their use the most approved tools and appliances, but need only furnish tools which are reasonably safe when properly used.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 180–184; Dec. Dig. §§ 101, 102.*]

4. MASTER AND SERVANT (§ 286*)—INJURIES — JURY QUESTIONS — SAFETY OF TOOLS.

The question of the master's reasonable care varies with the circumstances of the particular case, so that the question of whether tools furnished for employés' use were reasonably safe, under all the circumstances, is primarily a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010–1031; Dec. Dig. § 286.*]

Woodward, J., dissenting.

Appeal from Trial Term, Richmond County.

Action by Henry Paul, an infant, by Henry M. Paul, his guardian ad litem, against the Consolidated Fireworks Company of America. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and a new trial granted.

Argued before WOODWARD, JENKS, THOMAS, RICH, and CARR, JJ.

Herbert C. Smyth, for appellant.

Frederick W. Catlin (George M. Pinney, Jr., on the brief), for respondent.

CARR, J. The plaintiff appeals from a judgment of the Trial Term of this court, dismissing his complaint at the close of his case. It was the second trial of his action. The first trial resulted in a judgment of $10,000 in his favor. That judgment was reversed by this court, and a new trial ordered. Paul v. Consolidated Fireworks Co., 133 App. Div. 310, 117 N. Y. Supp. 698. On the new trial so ordered, the trial court was of opinion that the evidence presented by the plaintiff failed to make out a cause of action within the rule declared by this court in its opinion on the appeal from the first judgment, and, accordingly, dismissed the complaint on defendant's motion. The question now presented for decision is, primarily, whether our former decision covers the facts presented in the record now before us. Before considering this question in its details, it is well to note that the present record differs from the former in a very important distinction. On the first trial both parties tried out their respective cases. The appeal from the resulting judgment presented questions both of fact and of law, and this court was authorized to, and did, pass upon both. Here, however, the question presented is practically one of law, to be determined upon the assumption that the plaintiff's evidence is true, and that he is entitled to the most favorable inferences that may be drawn properly from the facts he has proved.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

126 N.Y.S.—49

The action is that of a servant against a master to recover for personal injuries alleged to have been caused by the negligence of the master. The defendant was engaged in the business of making fireworks. The plaintiff, at the time of the accident, was a mere lad of 15 years of age, and had entered into the service of the defendant about a year and a half before. One of the articles made by defendant for fireworks display was what is called in this case a "geyser." Its nature was that of a thick compressed paper cylinder, filled with an explosive powder compound which, when ignited by a fuse, emitted from its top a shower of brilliant sparks. In order to assist in its use for the purpose of display, a short and narrow piece of wood was secured to a side of the cylinder by one nail, which was inserted through the wood, through a hole previously prepared, and then driven through the paper cylinder into the composition filling to its full length, which was about one inch. To drive the nail home, a brass-headed hammer was used, and it required usually two strokes of the hammer to complete the driving, although at times three strokes were necessary. The composition filling the cylinder was put in by hand with a scoop, and then subjected to an hydraulic pressure of nearly two tons, thus compressing the mass within the cylinder to a compact and hard consistency, as the cylinders were in length but from four to seven inches, and the diameter of the interior was but one inch. The pressure was applied through a ram which fitted closely the interior surface of the paper cylinder case. The composition, so compressed, was a mixture of saltpeter, sulphur, and charcoal in defined proportions; the various substances having been mixed together in a tub by hand and finally run through a sieve, which was of 10 meshes to the inch. The plaintiff had nothing to do with making the mixture, nor filling the cylindrical case; his sole duty at the time of the accident being to secure the piece of wood to the already filled cylinder, in the manner above indicated. The nails furnished by the defendant for such use were made of steel wire, with a point of irregular shape. The plaintiff had been at work all morning at his bench, nailing these sticks to the geyser cylinders. The bench was of wood, with its table covered in places by zinc, galvanized iron, and sheet iron. On this surface had accumulated some small quantity of the explosive compound, which had escaped from the cylinders in the process of handling and nailing, and which lay on the table in the form of a fine dust. The accident happened in the afternoon. The plaintiff undertook to affix a stick to one of the geyser cylinders; he put the nail through the hole in the stick, and started to drive it into the cylinder at a spot marked on the surface for that purpose. At the second stroke of the hammer, the nail appears to have struck something hard, and the blow of the hammer was followed by a flash of flame from the cylinder, an explosion of the cylinder, and consequent serious injury to the plaintiff.

The story as to the happening of the accident was the same on both trials. The explanations offered as to its cause differ essentially. On the first trial, the plaintiff set out to prove that the explosion had been caused through a spark resulting from the forcible contact of

the head of the brass hammer with the head of the steel wire nail, and that this spark had communicated itself to the explosive compound lying on the table, and, through quick ignition, had caused an explosion. On the first trial, the undisputed evidence was that the compound in the "geyser" could not be exploded by concussion, but only by ignition caused by a spark or a flame. Hence the then necessity of accounting' for a spark. The claimed negligence of the defendant was then that, in furnishing for such use steel nails to be driven by a brass hammer, it failed to use ordinary care, for, according to the common knowledge of people handling explosive compounds, there was a constant danger of the generation of a spark from the forcible contact of steel and brass, and that to avoid such danger common prudence would require the use of nails made of brass or some soft metal. It was on this theory of causation that the question of defendant's liability was submitted to the jury on the first trial. This court reversed the judgment then obtained on the ground that there was no proof that, in fact, any spark resulted from the blow of the hammer on the head of the nail, and therefore no proof that the explosion had been caused through the use of unfit tools furnished by the defendant. This court evidently regarded the claimed causal connection of the hammer head and the nail head as too speculative to amount to the dignity of the proof required to establish liability under the facts of the case then before it. On the new trial, however, a new theory of the accident has been presented. It is not sought to account for the explosion on the theory of a spark generated outside the cylinder by the blow of a brass hammer on the head of a steel nail, and the learned counsel in his brief disclaims such a cause for the accident, frankly declaring that, in his opinion, the expert evidence on the first trial to that effect was based upon a clear mistake. Now the plaintiff seeks to account for the explosion of the cylinder by an ignition of the explosive compound within the cylinder, resulting from heat caused by friction following from the forcible contact of the steel nail with the hard mass of the compound. He gave proof to show that the compound was highly explosive, more so than blasting powder, and readily explosive under friction resulting from the contact of steel being driven into it forcibly. There was proof that the steel nail could produce friction enough to generate ignition and consequent explosion, and proof that in other places where geysers were made the use of steel nails was purposely avoided because of this fact.

Assuming that it was proved that in the use of steel nails, for the purposes above described, there was always present the danger of an explosion resulting from friction and consequent ignition, and that such danger could be reduced to some extent by the use of nails made of a softer metal, and by a lubrication of the explosive by graphite, can it be declared as a matter of law that a master, who has handled explosives for 20 years or more, has exercised reasonable care for the safety of his servants, in omitting lubrication of the explosive grains and in furnishing tools in the use of which there is necessarily inherent so grave a danger? Unless this question can be answered in the affirmative, then the learned trial court erred in dismissing the

complaint on the record now before us. All of the facts assumed in the foregoing question appear established, for the time being, in the proofs presented by the plaintiff on this trial. In endeavoring to present his proofs, some questions asked by plaintiff from his expert witness, as to the common knowledge of the properties of steel and explosives in the trade, and as to the nature and measure of the friction engendered, were excluded, upon objection by the defendant, and erroneously so. Yet there remains in the case proof of all the facts thus assumed. It seems to me quite clear that the question presented was not one of law, but one of fact for the jury. It is true that it appeared that the defendant had been using steel wire nails for five or six years without an accident, but if a probable danger of an accident was always present, and reasonably obvious to the master, then his past freedom from actual casualty does not in law amount to a justification of the continuance of such conduct; it is simply an element for the jury's consideration.

As was said by Cullen, J., in Latorre v. Central Stamping Co., 9 App. Div. 145, 41 N. Y. Supp. 99:

"The fact that no previous accident of this character had happened does not relieve the master from liability, provided the accident was such that the probability of its occurrence might reasonably have been foreseen. We think this accident of such a character. The danger of igniting the turpentine from inserting the heated metal was one that should have been anticipated by a person having the technical knowledge on the subject that the master must have possessed."

The case there was one in which a lad of 14 was set at work dipping heated metal spoons into a batch of turpentine. It is true, of course, that a master is not an insurer of the safety of the servant; nor is there any legal duty imposed upon him to use the most approved tools and appliances, even though some others may use them, and that his legal duty is fulfilled when he furnishes tools which are reasonably safe when handled with due care. There is in this case no suggestion of lack of care, nor assumption of risk on the part of the plaintiff. The question of reasonable care on the part of the master varies with the surrounding circumstances. What would be due care in a carpenter shop might be gross negligence in a powder mill. Whether the tools in question were reasonably safe, considering all the circumstances, including the nature of the risk, is primarily a question for the jury.

I recommend, therefore, that the judgment be reversed, and a new trial granted; costs to abide the event.

JENKS and RICH, JJ., concur.

THOMAS, J. Defendant's history relating to the manufacture of geysers shows that they do not explode by friction when a steel nail is driven swiftly into them. Such continued experience may reasonably create the presumption that the powder was so prepared that sudden contact with the nail, whatever the friction engendered, would not cause explosion. There is in the case at bar sufficient evidence that the driving of the nail in some way did cause the explosion.

Hence it is an allowable inference that the mixture at the time in the cylinder was more sensitive to the driven nail. Plaintiff's testimony is that he performed his duty in the usual manner. So we have the premises that theretofore a cause of explosion was not present, and that at the time of the accident such cause was present. While the mere fact of the explosion may not be sufficient evidence of negligence, yet when it appears that the plaintiff did no unusual act that could cause it, with the same conditions present, and that a piece of steel, like the nail in question, may by friction cause an explosion of some preparation of powder, and that explosion did occur, then the burden of explanation is put upon the defendant, and the determination of the issue is by the jury.

The defendant's methods theretofore had been safe; in this instance some method used by it proved unsafe; theretofore defendant had protected its servants doing in unnumbered instances the same act that the plaintiff did; then, in a particular instance, all experience in result was reversed, and there was havoc from explosion where there had been security. It cannot be inferred, under such circumstances, that what had been previously done by the master was done at this time, or that the same conditions and causes were present. The defendant's claim is that its former practice was safe, and carried immunity. With that assumed, the inquiry arises: Was the same practice pursued in making the geyser, which was delivered to the plaintiff, who, as he testified, drove the nail and handled the geyser, as he had theretofore done in safety? When methods that have through years brought immunity are followed by happenings that cannot be traced to such methods, then should not the master show why a customary act, theretofore safe, should cause explosion? The master should at least prove that the compound delivered to the servant was the same immune compound which it had previously delivered to him. The defendant has made no explanation. If several years' trial shows that a certain act of a servant in connection with a compound furnished him by the master is harmless, and then the same act in connection with a compound proves destructive, the master who made the compound, and not the servant who did the act, has the burden of meeting a prima facie case.

The judgment and order should be reversed.

WOODWARD, J. (dissenting). Upon a former appeal it was urged with great force that the plaintiff, a boy of 15 years of age, had been injured through the negligence of the defendant in providing a brass-faced hammer to drive a steel nail into a piece of fireworks known as a geyser; the theory being that the contact of the brass hammer with the steel nail had produced a spark, and that the spark had communicated with the combustible dust upon the workbench, and had caused an explosion of the geyser. The judgment in favor of the plaintiff was reversed. A second trial has been held, and it is now conceded that the former theory was without merit. The second trial proceeded upon the theory that the explosion was occasioned by driving a steel nail into the geyser, which consisted of a pasteboard receptacle filled with a compound of saltpeter, sulphur, and charcoal,

subjected to a heavy hydraulic pressure. A witness who described himself as a "consulting engineer," and who appears to have had considerable experience in constructing powder mills, and who had worked in such institutions as a foreman, testified that an explosion of this compound might be produced by the friction of driving a nail into the same; but he gave no reason for this view, nor did he attempt to show that his opinion was based upon any experiments conducted under similar circumstances. There was some evidence that some other concerns used brass nails for the purpose of fastening the stick to the geyser; but there was not a particle of evidence that this was done because it was any safer to use brass nails than steel nails, nor was there any evidence that brass nails would not produce the same amount of friction that would be produced by steel nails, and the case is barren of any evidence that any one at any time ever heard of a similar accident under like circumstances, or that anything had ever occurred to warrant any reasonable-minded man to believe that there was any danger to be apprehended from the manner of fastening the stick upon these geysers. On the contrary, it appears from the uncontradicted evidence in this case that these geysers had been manufactured under precisely similar circumstances for a period of five or six years in large quantities, and that no accident of the kind had even been known in the factory where the plaintiff was injured. It appeared, likewise, that for more than twenty years it had been the practice in this same factory to drill into these geysers with a rapidly revolving steel drill, so that there was very little reason for the master to anticipate that friction would explode these geysers, and this, taken in connection with the fact that after driving steel nails into these geysers for five or six years, no one had ever heard of an accident resulting, left a situation which on the 27th day of March, 1907, left no substantial duty of the master unperformed.

There is no evidence whatever that the geysers which were manufactured in other factories, and which are alleged to have been completed by using brass nails in the place of steel nails, were filled with the same compound; nor is there any evidence in this case, assuming that friction would explode the contents, that the nail which the plaintiff was driving at the time of the accident ever reached the same. The evidence is that the pasteboard receptacle was about half an inch thick, and about two inches in diameter, pressed so that it was nearly as substantial as papier-mâché; that the plaintiff placed the nail in the proper place and struck it a single blow, which did not send the nail home; and that he then struck another hard blow, and the explosion followed. For all that the evidence discloses, the nail may not have gone straight into the tube; it may have passed to the side and never reached beyond the pasteboard covering. It is all conjecture; no evidence whatever from which we may know what caused the explosion. There is even a lack of evidence that the geyser itself exploded in the first instance, and to say, under such circumstances, that there was such a danger as the master was bound to anticipate and guard against, when all the ingenuity of brilliant counsel, aided by expert testimony, is not able to point out after the accident what actually occurred, is to go beyond the bounds of reason, and to make

the master an insurer. The theory on which the action was originally tried negatived the idea of the geyser itself exploding in the first instance, while the one now under review assumes, without proving, that it did explode when the nail was hit a second time. What caused the explosion is left entirely to conjecture; no one pretends to say that any experience ever justified the opinion that the driving of a small steel nail into the geyser would cause such an explosion under normal conditions, and no abnormal conditions chargeable to the master, or to any one else, are shown. It is just as plausible to say that the brass-faced hammer produced a spark by striking the steel-headed nail, as it is to say that after five years of practical experience to the contrary, on this one occasion the friction produced by driving the nail into the compound caused the geyser to explode. All we have is the fact that the plaintiff, in the ordinary routine of his work, which he had performed for some time, placed a nail in the proper position, hit it one stroke of his hammer, and then followed it by a second blow, and that some kind of an accident happened. Whether there was a spark outside of the geyser, communicating to the combustible dust which had accumulated, or whether there was an explosion of the geyser itself growing out of the stroke of the hammer nowhere appears, and until it was definitely known, or until there was some evidence warranting a jury in determining that some particular result had been produced, no question was presented for a jury to determine.

How are we going to say that the master, who is presumed to have done his duty, has failed in the performance of a duty until we know at least what has resulted. We know that the plaintiff was injured, but we do not know whether the injury was the result of an explosion inside or outside of the geyser; whether it was due to some foreign substance accidentally mingled with the explosive compound, or to friction or to a spark produced by a blow of the hammer. It is quite as likely that in some manner a match or a percussion cap had fallen into the mixing tub and been transferred to the geyser when it was filled, as that the explosion could have been due to friction, after years of experience to the contrary. All that can be fairly said of the evidence is that it suggests a possibility that the explosion was caused by friction, but I know of no rule which requires a master to anticipate a bare possibility, and one which practical experience has never suggested to any one.

The judgment appealed from should be affirmed, with costs.