HENRY PAUL, an Infant, by HENRY M. PAUL, His Guardian ad Litem, Appellant, *v.* CONSOLIDATED FIREWORKS COMPANY OF AMERICA, Respondent.

HENRY M. PAUL, Appellant, *v.* CONSOLIDATED FIREWORKS COMPANY OF AMERICA, Respondent.

Second Department, March 16, 1917.

**Master and servant — negligence — injury to employee by explosion of fireworks while fastening stick by driving nail — evidence — expert evidence — evidence as to prior explosion.**

In an action for injuries sustained by the explosion of a piece of fireworks known as "geyser" while the plaintiff was engaged in fastening a stick to it by driving a steel nail through the stick and into the "geyser" with a brass faced hammer, the rule that expert evidence to support the plaintiff's theory that the "geyser" was exploded by heat due to friction incident to the driving of the nail is "too speculative," cannot be invoked in the absence of uncontroverted proof of similar usage without accident in the largest manufactories for many years.

Testimony of an employee of the defendant, that twenty-three or twenty-four years before the accident, when he was driving a steel nail into a "triangle," there was an explosion, was inadmissible, the two pieces of fireworks being dissimilar in size, composition and construction.

MILLS, J., dissented.

APPEALS by the plaintiff in each action from judgments of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 16th day of May, 1916, upon the dismissal of the complaints by direction of the court at the close of plaintiff's case. The actions were tried together.

*Richard J. Donovan* [*Herbert D. Cohen* with him on the brief], for the appellant.

*Frederick W. Catlin,* for the respondent.

PER CURIAM:.

Before the defendant could invoke the decision of the Court of Appeals, that expert evidence to support the plaintiffs' theory that the geyser was exploded by heat due to the friction incident to the driving in of the steel nail, was "too speculative," there must have been on this trial uncontradicted proof of similar usage without accident in the largest manufactories for many years. (See *Paul* v. *Consolidated Fireworks Co.,* 212 N. Y. 120.) As the court, upon motion of the defendant, dismissed the plaintiff at the close of his case, there is, in this record, no such proof adduced by the defendant. We cannot, of course, eke out the present record from the records of the prior trials. But the Court of Appeals also declared that the rule applicable to the case is that stated by WOODWARD, J., on the first appeal, "that tools and appliances which have been in use for many years and have been found to serve their purpose with reasonable safety may be retained in use without the imputation of negligence, even though others have found it advisable to make use of improved appliances. In other words, negligence is not a matter to be judged after the occurrence; it is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated" (133 App. Div. 314). In the present record, the plaintiff, upon direct examination, put this question to his expert witness Layng: "Q. Mr. Layng, assuming that in a fireworks establishment March 27th, 1907, in the City of New York, where geysers such as Plaintiff's Exhibit 2 were being made, and where the com-

position was 18 saltpeter, 4 sulphur and 6 charcoal, and where the composition was mixed by hand and strained through a 16-mesh sieve, and then placed in the cylinder and rammed home with hydraulic pressure of one ton and four-fifths, the ends of the cylinder being then sealed with clay, and that in nailing wooden strips on the cylinder — the wooden strips having a hole in them for the insertion of the nail — steel wire nails were used, similar to Plaintiff's Exhibit 5, and were driven home through the case and into the composition about one-half an inch with two or three blows of a brass faced hammer with a handle about six inches long: Can you state whether in the light of the art of fireworks as it was known on March 27th, 1907, the use of a steel nail was a proper method? * * * A. It was; I believe that was the practice of the art. By the Court: Q. Is that the way to do it? A. That is the way it was done — it has been done. Q. That is the way it was done generally, all over? A. It has been done generally; as far as I know it is the customary practice." By plaintiff's counsel: " Q. I am asking you if it was safe? (No answer.) By the Court: Q. That is the customary practice of doing it? A. I believe it is the customary practice." Plaintiff's counsel: "I don't think the witness understands the question; I will read it again. The Court: Well, we will take an adjournment now. (The Court admonished the jury, and adjourned the further trial of the case until Monday morning, April 10th, 1916, at ten o'clock.)" Upon continuance, the same question was put again, and the witness answered, it was not a "*proper* use." Despite the opinion of the expert as to propriety, we have his testimony that the use of the steel nail was the practice of the art, that it was the way it was done, has been done, done generally, was the customary practice so far as the expert knew, and that he believed it was the customary practice. And there was no competent proof of prior accident. At the outset of the trial the learned counsel for the plaintiff asserted that, in addition to former proof, he purposed to show "previous explosions of the same kind." The only proof offered was the testimony of Owens, that, when an employee of the defendant 23 or 24 years before this accident, he was driving a steel nail into a *triangle* and there was

Second Department, March, 1917.          [Vol. 177.

an explosion.    The plaintiff undertook to show similarity between a triangle and a geyser.    But it appeared that the formula for composition was in part different in that there was no powder in a geyser, that the size was different, that the composition was subjected to a different pressure, that of the geyser being greater by more than a ton.    These different conditions justified the exclusion of the testimony under the principle stated in *Dye* v. *D., L. & W. R. R. Co.* (130 N. Y. 671); *Brady* v. *M. R. Co.* (127 id. 46); *Morrow* v. *Westchester Electric R. Co.* (54 App. Div. 592; affd., 172 N. Y. 638).    The distinction is explained in Wharton's Law of Evidence (§ 42). The rulings of the court upon the questions put to the said expert were sometimes too rigid, but none of them excluded testimony that could have changed the features of the case as presented to the court when the motion for dismissal was made.

I advise that the judgment be affirmed, with costs.

JENKS, P. J., THOMAS, RICH and PUTNAM, JJ., concurred; MILLS, J., voted for reversal and a new trial, upon the ground that the evidence presented a case for application of the exceptional rule in reference to a practice inherently dangerous. (See *Croghan* v. *Hedden Construction Co.*, 147 App. Div. 631, 634.)

In each case, judgment affirmed, with costs.